IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDEEP SINGH MANN, M.D.,            )
    Reg. No. 24775-009                         )
    USP Tucson                                    )
    P.O. Box 24550                               )
    Tucson, Arizona  85734                   )
                                )
      *Plaintiff,*                                       )
                                )
      v.                                                   )      No. _____
                                )
BUREAU OF ALCOHOL, TOBACCO,          )
    FIREARMS & EXPLOSIVES,             )
    99 New York Avenue, N.E.             )
    Washington, D.C. 20226                 )
                                )
EXECUTIVE OFFICE FOR                  )
  UNITED STATES ATTORNEYS           )
    United States Department of Justice  )
    950 Pennsylvania Ave., N.W. # 2242  )
    Washington, D.C. 20226                 )
                                )
    Defendants.                                    )

<u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

    1.    This is a complaint for declaratory and injunctive relief under the

Freedom of Information Act ("FOIA"), as amended, 5 U.S.C. § 552.

## Jurisdiction and Venue

    2.    The Court has jurisdiction over this action pursuant to 5 U.S.C.

§ 552(a)(4)(B) and 28 U.S.C. § 1331.

    3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## Parties

    4.    Plaintiff Randeep Singh Mann, M.D., practiced medicine in northwest

Arkansas until he was arrested and charged in connection with the explosion of a

grenade outside the vehicle of the chair of the state medical board, which had

disciplined him, but which he expected to restore his full right to practice at its next

meeting.  Having been denied relief on appeal, postconviction relief, and certiorari,

the plaintiff files this action to show people the kinds of things their agents did to

convict him falsely, in the hope that getting out the truth will make the same thing

less likely to happen to other innocent people, and that the agents who did these

things will be sanctioned appropriately.  In doing so, he is acting as a private

inspector general.

5.     The Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) is an

agency of the federal government within the meaning of 5 U.S.C. § 551(1),

rendering it subject to the requirements of FOIA.

6.     The Executive Office for United States Attorneys (EOUSA) is an

agency of the federal government within the meaning of 5 U.S.C. § 551(1),

rendering it subject to the requirements of FOIA.

## Factual Record of the Requests and Statutory Violations

7.     In observance of LCvR 5.1(e)'s admonition to minimize exhibits—and

in recognition that the principal pre-discovery exchange of documents will take

place under Fed. R. Civ. P. 26(a)(1)(A)—when the agency has ***acknowledged

receipt*** of a request and assigned it a number, the plaintiff has quoted and/or

paraphrased its substance, leaving only the unacknowledged requests as exhibits.

It is not the responsibility of the plaintiff that there were so many unacknowledged

requests.  At all of the points when he submitted these requests, he was pro se and

filing them from an institution of the Bureau of Prisons (a subdivision of the Department of Justice, as are the defendants).

8.     Peaking in 2024, at least one pumping station on the police-prosecution-prison pipeline took away and destroyed or sent to other persons in privity with the defendants the plaintiff's legal papers, especially mail going to and from the plaintiff, and specially when the sender or addressee was his attorney in the present action and previous actions.  The need to submit the attached exhibits to assure that the defendants are not taken by surprise at what they sent, or were tendered, should not be held against the plaintiff if any of the originals he mailed, or that were addressed to him, were thrown into the sewer.

9.     As to each of the following requests, the plaintiff has exhausted his administrative remedies, constructively or otherwise, or has resubmitted requests to address defects that the agency found in earlier submissions.

10.     As to each of the following requests, the plaintiff has a legal right to the records he seeks, and there is no basis in law for respective defendants' refusal to provide them to the plaintiff at least on the basis, if any, asserted for the refusal.

11.     As to each of the following requests, the plaintiff lacks an adequate remedy at law and is entitled to injunctive relief.

### Request of May 10, 2019, resubmitted twice and recognized with No. 2019-004277 on filing of August 8, 2019

12.     On May 10, 2019, the plaintiff filed with the Executive Office for United States Attorneys (EOUSA) a request for

> Any and all documents and data, including but not
> limited to CDs, DVDs, VHS recordings, audio recordings,
> related to Expert opinions, thoughts, impressions and

> such rendered by individuals in the fields of
> photogramrnetry, photo science, cartography, geology, soil
> science, agronomy, archiology, horticulture, biology,
> botany, forensic crime recreation, computer science,
> imaging or any other related or unrelated field/ speciality
> or opinions, thoughts, impressions and such rendered by
> nonexperts, law enforcement officers or even lay persons,
> rendered in the aforementioned case. These opinions,
> thoughts, impressions and such related to the "finding" in
> the woods at the end of or around the cul-de-sac of Galaxy
> Lane in London, AR of a box of grenades by Mark Rinke
> and Ryan Kimbell on or around March 3, 2009.

The request recognized the possibility of agency's assertion of privilege, but also requested that such assertion be explained with particularity. It offered to pay the requisite fees. It requested a response within twenty working days.

13.     In a letter dated July 9, 2019, EOUSA's agent Kevin Krebs responded, assigning the original request number 2019-003532, and X'ed the items saying that the plaintiff had not specified which federal judicial district's U.S. Attorney's Office was involved, and that the request did not "describe the records sought in sufficient detail". The document closed the request, and invited the plaintiff to file a request curing the asserted deficiencies.

14.     On July 15, 2019, the plaintiff sent Mr. Krebs a version of the previous request identifying the district and going into greater detail about the records requested. Referring to the records he sought, he used the expression "would have been obtained by the U.S. Attorney's Office-Eastern District of Arkansas anytime between June 2009 and the present time."

15.     In a letter dated July 23, 2019, Mr. Krebs responded by assigning the Request No. 2019-003806 to the second try, but X'ing the same boxes and closing the second request as he had the first, leaving open the option of resubmitting.

16.     On August 2, 2019, the plaintiff sent another request laying out yet again the agency that worked with the U.S. Attorney's Office on the case, and saying in so many words, using the past participle, that "The records ***were generated*** between March 2009 and the present time" (emphasis supplied).  In other words, the third version of the request made even clearer that it referred to records in esse, and did not request the creation of new records.  If the agents had done no research to counter the expert testimony on the "finding" issue that he had presented in his section 2255 action, an honest answer would have been to say no such records existed, not to check a box saying the plaintiff had somehow violated FOIA by asking for records which the agents had collected and maintained.

17.     In a letter dated August 28, 2019, Mr. Krebs responded by assigning the Request No. FOIA-2019-004277, but X'ing the box saying "The Freedom of Information Act only applies to records already in existence and does not require an agency to conduct research, create new records, or answer questions presented as FOIA requests."

18.     On September 7, 2019, the plaintiff submitted an appeal to the Office of Information Policy (OIP) noting his three attempts to obtain the requested records and expressly providing the Request Number of the most recent of these attempts.  The appeal also referred to two earlier versions of the same request as well as another request filed in 2015.

19.     Not having received an acknowledgment of his September 7, 2019, within the 90-day period for an administrative appeal, on November 15, 2019, the plaintiff sent another appeal setting forth substantially the same grounds on appeal.

20.     In at letter dated March 6, 2020, the OIP's agent Christina D. Troiani appears to assert that by a production of records dated January 2, 2020, the agency had rendered the 2015 request moot.  She stated that the first two of the latest three requests were, respectively, ***postmarked*** ten and five days after the regulatory deadline for an administrative appeal.  But she does not address the timeliness or the merits of the appeal of Request No. 2019-004277.  Even adopting her postmark due-date standard when she addressed the letter to the plaintiff in a federal prison (where guards or others in privity with her control access to the U.S. Postal Service), the appeal was ten days early as to the third request.  On the date the plaintiff mailed the first appeal, it was timely as to all three requests for the same records.

21.     In a letter of March 16, 2020, the plaintiff gave the IOP an opportunity to correct these errors that did not require it to take his word for when he sent in the first appeal (which had to run a gantlet of prison employees whose job security depended on the body-count, *i.e.*, no one getting relief from courts or administrative entities), but only to use a calendar.

22.     Neither at the time he submitted the request nor at the time the ATF denied it did the plaintiff have any action pending that could have resulted in the occasion of his being brought to trial again after receiving some form of judicial relief.

23.     On information and belief, to be confirmed or disconfirmed on the pleadings and/or discovery, neither the ATF nor any other defendant was then engaged in investigating the offenses for which the plaintiff and his wife were convicted.

Request of July 16, 2020

24.     On July 16, 2020, the plaintiff sent the ATF a request for the disposition of items seized on March 4, 2009, from his home and that of his wife and co-defendant Sangeeta Mann, and from the medical office where he and Mrs. Mann worked.  He listed items from each location that were known to him, and additionally provided inventory forms from the Arkansas State Police listing things they admitted they took from both locations.  He offered to make arrangements for funds assuming they would be required.  He requested copies of the records within twenty working days.

25.     In a letter dated March 25, 2022, 617 days or *1.7 years* later, the agency's agent Adam C. Siple wrote the plaintiff assigning the request the number 2020-1162 and refusing to account for the ***disposition*** of the Manns' property relying on Exemption 7(A): "At this time, the investigation is still open. Therefore, your request is denied pursuant to 5 U. S.C. § 552(b)(7)(A) because it concerns an ongoing investigation."

26.     Neither at the time he submitted the request nor at the time the ATF denied it did the plaintiff have any action pending that could have resulted in the occasion of his being brought to trial again after receiving some form of judicial relief.

27.     On information and belief, to be confirmed or disconfirmed on the pleadings and/or discovery, neither the ATF nor any other defendant was then engaged in investigating the offenses for which the plaintiff and his wife were convicted.

28.    On April 6, 2022, the plaintiff appealed the ruling by the ATF, challenging the application of Exemption 7 to **accounting for** his and his wife's property on the ground that it would interfere with enforcement proceedings.

29.    In a letter dated June 10, 2022, OIP agent Matthew W. Hurd repeated the line that release of the records the plaintiff sought would reasonably foreseeably be expected to interfere with enforcement proceedings, and refused to answer the questions the plaintiff had asked for the purpose of making the point that the release would **not** do what the agency **claimed** it would do to further enforcement proceedings.

<u>Request of April 12, 2021</u>

30.    On April 12, 2021, the plaintiff submitted a request to the ATF for (1) "Any and all complaints, arbitrations, disciplinary sanctions, quality assurance of testimonies, and Any and all FOIA requests made by individuals or entities pertaining to" the agency's agents Warren Newman and David Oliver, the case agents on the police-prosecution-prison team in the case against him and his wife; and (2) "Chain of custody of the 98 40mm HE grenades related to case no. 4:09-cr-00099-BSM United States v Randeep Mann".

31.    As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting it as to any given record, and requested partial production when full production would be all he could lawfully obtain.  He agreed to pay the requisite fees.  He requested copies of the records within twenty working days.

32.     One hundred fifty-eight (158) days later, in a letter dated September 17, 2021, ATF agent Siple responded by asserting once more that "the investigation pertaining to you is still open."

33.     Neither at the time he submitted the request nor at the time the ATF denied it did the plaintiff have any action pending that could have resulted in the occasion of his being brought to trial again after receiving some form of judicial relief.

34.     On information and belief, to be confirmed or disconfirmed on the pleadings and/or discovery, neither the ATF nor any other defendant was then engaged in investigating the offenses for which the plaintiff and his wife were convicted.

35.     On September 30, 2021, the plaintiff appealed the Siple order, citing the fact that the case was over and he had been sentenced to life imprisonment, urging that he should have received the chain of custody data in discovery before trial.

36.     In a letter dated January 31, 2022, OIP agent Hurd ruled in part: "After carefully considering your appeal, and as a result of discussions between ATF personnel and this Office, I am remanding part one of your request to ATF for processing." As to the chain of custody of the grenades, however, Hurd stuck with the party line that allowing any access to this information "reasonably be expected to interfere with enforcement proceedings."

37.     In a letter dated March 25, 2022, ATF agent Siple once more denied any portion of the records requested on the case agents, asserting that they were "third parties" when they were line agents in the same agency. He suggested that if

they were dead, the records could be released, even providing the identification number of the form the plaintiff should use to report their deaths—something Siple sent the plaintiff in spite of the conviction for which he was serving a life sentence. Perhaps believing that the plaintiff could put out a hit on them, he Glomared the plaintiff about the existence of the records.

38.     On April 7, 2022, the plaintiff appealed the denial of any records on remand.  In the appeal he expressly invoked the public interest in exposing official wrongdoing as outweighing whatever privacy interest these people still have when acting not as individuals but as agents of a government.

39.     In a letter dated June 28, 2022, OIP agent Troiani stuck to the *Glomar* nonresponse, adhering to the legal fiction that a government agent is an individual actor whose personal privacy outweighs the public's need to know about bad apples in the federal law-enforcement orchard while they are acting on behalf of the most power entity on the planet even when they act out of visceral personal motives that distort their judgment.  *Mann v. United States*, No. 4:09CR00099-01 BSM ECF#485 (E.D. Ark. July 31, 2015) (Response Exhibit 10) (under seal), a sworn admission containing, inter alia, admissions showing that that had happened here.

Request of February 4, 2022

40.     On February 4, 2022, the plaintiff submitted a request (Complaint Exhibit 1) to the ATF, identifying the case in which he convicted and imprisoned, and seeking (1) the identities of alternative suspects in addition to the "five doctors that had been most recently disciplined by" the Arkansas State Medical Board that ATF agent Oliver had asked for (No. 4:09CR00099-01 BSM, ECF##235-256, Trial

Transcript 2547), adding that on information and belief there were more additional suspects that the ATF sought to conceal; and (2) the identities and all statements of witnesses, prospective witnesses, individuals, and inmates who were interviewed by law enforcement official either in person, over the phone, or via e-mail.

41.     He added that the department had surreptitiously and egregiously withheld the information he had as of that date gone to great lengths to obtain—in violation of *Brady*, *Giglio*, *Jencks*, and *Napue*—by the incessant incantation of "the case is still open" and any information he sought "could reasonably interfere with enforcement proceedings" that are "pending of reasonably anticipated" long after he had been convicted and sentenced.  He beseeched and implored the agency from resorting to further spoliation of evidence.

42.     That said, as he generally made explicit in these requests, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial production when full production would be all that the agency contended he could lawfully obtain.  Subject to that recognition and qualification, he expressed his expectation for a response or reply within twenty working days, and agreed to pay the requisite fees.

43.     Plaintiff received no response to the foregoing request.

<u>Request of March 25, 2022</u>

44.     On March 25, 2022, the plaintiff submitted a request to the EOUSA for either (1) forensic testing of a tire that was the subject of trial testimony and post-trial propaganda about "the spare tire of my highly modified Mazda RX 7 as being a

practice tire related to the explosion" which was the gist of the prosecution *or* (2)

release of the tire for independent forensic testing.

45.    In the request the plaintiff specified the case number that would have

identified the federal judicial district on a PACER search, and explained the

significance of the evidence he sought:

> my Mazda RX 7 had a leak in the trunk area that resulted
> in water accumulating in the wheel well of the spare tire.
> Having gone unnoticed and undetected for an extended
> duration, there was malodor and the presence of an
> extensive growth of slimy algae on the surface of the tire
> and the aluminum-magnesium alloy wheel.  On account of
> it being bitterly cold, the temperatures being in the
> freezing zone, rather than spend an extended duration of
> time scrubbing the filth of the tire in the frigid outdoors
> with ice cold water I decided to take the tire into the
> house and scrub the muck off it in the warm confines of
> my shower stall where I used a tooth brush to clean it to
> the best of my ability.
>
> After having cleaned it I left it to dry in the shower stall
> itself, on account of the car being in the work shop at
> Sorrell's Body Shop and thereafter when the atiology of
> the leak had remained dubious, in the driveway waiting
> for the water to reaccumulate in the wheel well.
>
> The ATF had subsequently questioned my wife, Sangeeta
> Mann regards the tire and she to the best of her
> knowledge had told them that I was cleaning off rust from
> the tire, which would also have appeared blackish .
> Having found no rust on the aluminum-magnesium alloy
> wheel that would inherently be rust resistant, the ATF
> implied guile on her part and further bolstered their
> stance of the tire having been in the shower stall for
> nefarious reasons.
>
> In my PCR/ 2255 motion I had wanted the Court to Order
> the testing of that tire for the presence of algae, the trace
> remnants of which would have still remained on the tire,
> notably at the junction of the wheel rim and where the
> tire was seated, an area that I could not have accessed
> with the tire having been persistenly inflated when I had
> done the scrubbing with a toothbrush.

46.    Plaintiff received a letter dated April 4, 2022, from EOUSA agent Krebs assigning the request No. 2022-001575 and closing it because he checked the boxes that (1) it was not accompanied by a certification of identity form, and (2) it did not more expressly identify the federal judicial district where the case arose.

<u>Request of May 5, 2022</u>

47.    On May 5, 2022, the plaintiff submitted to the EOUSA a request referring to the specific tire that was used at trial and in public media which the March 25, 2022, request referred, but which the limited to "a copy of the forensics that the Government/ ATF ran on that tire," *i.e.*, a record, not future testing by anyone.

48.    As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial production when full production would be all that the agency contended he could lawfully obtain.  He agreed to pay the requisite fees.  He expressed his expectation for a response or reply within twenty working days.

49.    Plaintiff received a letter dated May 23, 2022, from EOUSA agent Krebs acknowledging receipt of what appears to be the foregoing request, assigning it Request No. 2022-002032, reciting: "The records you seek require a search in one or more field offices and potentially involves voluminous records and/or requires consultation with another agency/component with a substantial interest in the subject-matter and therefore falls within 'unusual circumstances.'  See 5 U.S.C.S

§ 552(a)(6)(B)(i)-(iii).  Accordingly, we are extending the time limit to respond to our [*sic*] request beyond the ten additional days provided by the statute."

50.    The letter dated May 23, 2022, also referred to costs associated with searching for and copying the records requested.

51.    On May 31, 2022, the plaintiff replied to Krebs's May 23 letter agreeing to pay for the retrieval and copying of the records requested on the algae forensics, submitting a form.

52.    In a form letter dated June 23, 2022, and bearing the Request No. 2020-002032, Mr. Krebs checked the box that the request had not specified a U.S. Attorney's Office that was involved in the matter.  On this basis, after sending the letter dated May 23, 2022, it closed the request and required the plaintiff to restart the process as to the covered report or reports.

53.    In a somewhat different form letter dated June 30, 2022, referring to the same Request Number, Mr. Krebs checked the equivalent box as he had on the form letter dated June 23, 2023, and closed the matter a second time.

<u>Request of May 6, 2022</u>

54.    On May 6, 2022, the plaintiff requested (Complaint Exhibit 2) that the ATF provide records of the damage to the Lexus SUV that the victim of the explosion had been beginning to enter when the grenade went off, as well as of the damage to his residence.  The requested records included the foundation of the damage assessments, the insurance carrier and insurance payment regarding the vehicle, any transfer of the vehicle, and the current owner of the vehicle.  Plaintiff

agreed to pay the requisite fees, and expressed his expectation of a response within twenty working days.

55.    Having received no response to the May 6, 2022, request, on November 25, 2022, the plaintiff wrote ATF agent Siple recounting that he had sought the same or similar records in Request No. 2015-0544, but had been denied them on the stated basis that the "investigation is still open", but asked if the ATF still relied on that ground when he had been convicted and sentenced, and seven years had gone by since the previous invocation of that basis for denial of the records.

56.    Plaintiff received no response to his letter of November 25, 2022.

<u>Request of May 7, 2022</u>

57.    On May 7, 2022, the plaintiff submitted to the EOUSA a request (Complaint Exhibit 3) for records of the following:

> [1]  How many times was I referred to for prosecution since my entry into the United States in Dec 1983, including the case United States v Mann, which led to my eventual conviction?
>
> [2]  Who were the individuals or what agencies did they represent who referred me for prosecution?
>
> [3]  What were the reasons offered for subjecting me to the respective prosecutions? [and]
>
> [4]  What were the conclusions made to deny proceeding forward with the respective prosecutions?

58.    As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial production when full production would be all that the agency contended he could

lawfully obtain. He agreed to pay the requisite fees. He expressed his expectation

for a response or reply within twenty working days.

59.    Plaintiff received no response to this request.

<u>Request of June 30, 2022</u>

60.    On June 30, 2022, the plaintiff introduced his request (Complaint

Exhibit 4) by saying, in part, that he had "been given to understand on information

and belief that there were numerous DVDs in existence pertaining to my case", and

requested that the ATF provide him the following records:

> [1] the chain of custody of electronic data and information
> in your possession, specifically but not limited to CDs,
> DVDs that were in your / ATF's/ Government's possession
> [and]

> [2] the chain of custody of the computers that were
> removed from my premises, 313 Milky Way Lane, London,
> AR and my office at 111 Skyline Drive, Russellville, AR.

61.    As he generally made explicit, the plaintiff recognized the potential for

claims of privilege or other protection, and simply sought a factual and legal

explanation for asserting any as to any given record, and requested partial

production when full production would be all that the agency contended he could

lawfully obtain. He agreed to pay the requisite fees. He expressed his expectation

for a response or reply within twenty working days.

62.    Plaintiff received no response to this request.

<u>Request of July 5, 2022</u>

63.    On July 5, 2022, the plaintiff submitted to the ATF a request specifying several states in which records would be found if they existed, and agreeing to pay the requisite fees, and seeking records of the following:

> [1]  How many times was I referred to for prosecution
> since my entry into the United States in Dec 1983,
> including the case United States v Mann, which led to my
> eventual conviction?
>
> [2]  Who were the individuals and or which agencies did
> they represent who referred me for prosecution?  [and]
>
> [3]  What were the conclusions made to deny proceeding
> forward with the respective prosecutions?

64.    As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial production when full production would be all that the agency contended he could lawfully obtain.  He agreed to pay the requisite fees.  He expressed his expectation for a response or reply within twenty working days.

65.    Plaintiff received a letter dated July 15, 2022, from ATF agent Siple acknowledging receipt of what appears to be the foregoing request, assigning it Request No. 2022-01119, reciting: "The records you seek require a search in at least one other office, and so your request presents 'unusual circumstances.'  See 5 U.S.C.S § 552(a)(6)(B)(i).  Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute."

66.    Subsequently the plaintiff received a letter dated September 23, 2022, from ATF agent Siple administratively closing the request on the ground that "At this time, the investigation relating to the matter in your request is ongoing."

67.    Neither at the time he submitted the request nor at the time the ATF denied it did the plaintiff have any action pending that could have resulted in the occasion of his being brought to trial again after receiving some form of judicial relief.

68.    On information and belief, to be confirmed or disconfirmed on the pleadings and/or discovery, neither the ATF nor any other defendant was engaged in investigating the offenses for which the plaintiff and his wife were convicted.

69.    Not having received the letter dated September 23, 2022, by December 10, 2022, the plaintiff wrote Mr. Siple to set out the delay and to reiterate the request by reference to the original letter.

70.    On January 24, 2023, the plaintiff wrote the Office of Information Policy, setting out the sequence of the July 5, 2022, request, the December 10, 2023, letter to follow up on it, and the receipt on January 23, 2023, of the denial dated September 23, 2022, also reiterating that the alleged closure of the case was at best erroneous.

71.    Plaintiff received no response to this appeal.

Request of July 6, 2022

72.    On July 6, 2022, the plaintiff submitted to the EOUSA a request specifying several states in which records would be found if they existed, agreeing to pay the requisite fees, and seeking records of the following:

[1]  How many times was I referred to for prosecution
since my entry into the United States in Dec 1983,
including the case United States v Mann, which led to my
eventual conviction?

[2]  Who were the individuals and or which agencies did
they represent who referred me for prosecution?  [and]

[3]  What were the conclusions made to deny proceeding
forward with the respective prosecutions?

73.    As he generally made explicit, the plaintiff recognized the potential for

claims of privilege or other protection, and simply sought a factual and legal

explanation for asserting any as to any given record, and requested partial

production when full production would be all that the agency contended he could

lawfully obtain.  He agreed to pay the requisite fees.  He expressed his expectation

for a response or reply within twenty working days.

74.    Eighty-five (85) days later, the plaintiff received a form letter dated

September 29, 2022, from EOUSA agent Krebs assigning the Request No. 2022-

002508 and X'ing the box that said the files of U.S. Attorney are maintained in

different offices, and adding "You provided a list of seven (7) states in which

responsive records may be located; however, most states have multiple districts.

Please provide the specific districts that should be searched."

75.    The letter added that the request was not accompanied by a

certification of identity form.  The file contains such a form dated July 6, 2022, but

of course no agent of the federal government would admit they overlooked it or just

didn't accept a curative filing when they stood behind the counter.

76.    On these bases, EOUSA closed the request as its final action.

<u>Request of July 12, 2022, to ATF</u>

77.    On July 12, 2022, the plaintiff submitted to the ATF a request for records of forensic testing requested from EOUSA on May 5, 2022.  This request used verbs to make it clear that the request referred to records of forensic testing in esse rather than expecting federal agents to do any work that might show that one of their agents had given false or misleading testimony:

> I would like to have a ***copy*** of the forensics ***that the Government/ ATF ran*** on that tire and rim/ wheel, the results of which would have .confirmed what I was alluding to, the presence of organic matter/ algae. The organisms would ahve been present despite the fact that I had scrubbed the tire and rim thoroughly. Even my most fervent attempts would not have removed the residues of organic matter from the junction of the tire and wheel rim.  [Emphasis added.]

78.    As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial production when full production would be all that the agency contended he could lawfully obtain.  He agreed to pay the requisite fees.  He expressed his expectation for a response or reply within twenty working days.

79.    Plaintiff received a letter dated July 19, 2022, from ATF agent Siple designating the request as No. 2022-01126, and invoking the "unusual circumstances" provision to grant the agency an open-ended extension of time while the plaintiff was imprisoned for life without parole.

80.    ATF's agent added that "this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests

usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the Simple track."

81.     Having heard nothing of the request as of September 23, 2022, when the letter assigning it to the simple track implied it could be answered in about one month, the plaintiff wrote Mr. Siple to point out the passage of time and attempt to obtain a response.

82.     Plaintiff received no response from his letter of September 23, 2022.

<u>Request of July 12, 2022, to EOUSA</u>

83.     On July 12, 2022, the plaintiff submitted to the EOUSA a request (Complaint Exhibit 5) for records of forensic testing requested from EOUSA on May 5, 2022, paring back even further on the request of March 25, 2022, to emphasize that the request referred to records of forensic testing in esse rather than expecting federal agents to do any work that might show that their prosecutors had sponsored false or misleading testimony:

> I would like to have a ***copy*** of the forensics ***that the Government/ ATF ran*** on that tire and rim/ wheel, the results of which would have confirmed what I was alluding to, the presence of organic matter/algae.  The organisms would ahve been present despite the fact that I had scrubbed the tire and rim thoroughly. Even my most fervent attempts would not have removed the residues of organic matter from the junction of the tire and wheel rim.  [Emphasis added.]

84.     As he generally made explicit, the plaintiff recognized the potential for claims of privilege or other protection, and simply sought a factual and legal explanation for asserting any as to any given record, and requested partial

production when full production would be all that the agency contended he could lawfully obtain.  He agreed to pay the requisite fees.  He expressed his expectation for a response or reply within twenty working days.

85.    Plaintiff received no reply or response to this request.

### Request of November 25, 2022

86.    On November 25, 2022, the plaintiff wrote ATF agent Siple in his role as Chief of the Information Privacy & Governance Division of the ATF regarding the request the plaintiff had submitted on May 6, 2022, seeking the ATF to provide records of the damage to the Lexus SUV that the victim of the explosion had been beginning to enter when the grenade went off, as well as of the damage to his residence.  Plaintiff went through the history of the original request, denial claiming the investigation was still open, and affirmance of denial in 2015.  This request raised the question whether after the passage of seven years (at the time of the November 25, 2022, request) the matter was still open.

87.    In a letter dated December 12, 2022, Mr. Siple designated the November 25, 2022, request as No. 2023-00282, and again invoked the "unusual circumstances" provision to grant the agency an open-ended extension of time while the plaintiff was imprisoned for life without parole.

88.    ATF's agent added that "this office assigns incoming requests to one of three tracks: simple, complex, or expedited.  Each request is then handled on a first-in, first-out basis in relation to other requests in the same track.  Simple requests usually receive a response in approximately one month, whereas complex requests

necessarily take longer. At this time, your request has been assigned to the Simple track."

89.    Having received nothing from the ATF in response as of September 22, 2023, the plaintiff wrote Mr. Siple again, noting the passage of time, and again requesting the information.

90.    Plaintiff received no reply or response to his letter of September 22, 2023.

## Count One
(Request of May 10, 2019, resubmitted twice and recognized with No. 2019-004277 on filing of August 8, 2019)

91.    Plaintiff restates and realleges the propositions in paragraphs 1 through 23.

92.    On administrative appeal, EOUSA's agent ignored the request that took account of the objections cited to previous versions, when the responses to the latter had left open the option of submitting corrected requests such as FOIA-2019-004277.

93.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

## Count Two
(Request of July 16, 2020)

94.    Plaintiff restates and realleges the propositions in paragraphs 1 through 29.

95.     Defendant ATF failed to respond or otherwise reply to the plaintiff's request of July 16, 2020, until 617 days or 1.7 years after its submission, rather than within the twenty working days the statute allows.

96.     When ATF got around to saying something, it asserted that the investigation was "still open", when according to the various agencies of the Department of Justice, they had "gotten their man" and he was (and remains) serving a term of life imprisonment in 2010, and had no proceedings which could even theoretically result in the need to retry him pending at the time of this request (or any other involved in the present complaint).

97.     On information and belief, therefore, the plaintiff denies that any investigation was open at the time of the request, the response, or this complaint.

98.     Defendant ATF is improperly withholding documents under the Freedom of Information Act.

## Count Three
(Request of April 12, 2021)

99.     Plaintiff restates and realleges the propositions in paragraphs 1 through 39.

100.    Defendant ATF did not make any reply or response to the plaintiff's request of April 12, 2021, for one hundred fifty-eight (158) days, when the statute allows it twenty.

101.    When it did purport to respond, its agent said: "the investigation pertaining to you is still open."

102.    On information and belief, the plaintiff denies that any investigation was open at the time of the request, the response, or this complaint.

103.    After remand on the part of the request about the case agents for defendant ATF in the matter, the ATF's fellow-servant ruled that they were "third parties" despite the fact that the only records requested pertained to their official conduct on behalf of the United States.

104.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

### Count Four
(Request of February 4, 2022)

105.    Plaintiff restates and realleges the propositions in paragraphs 1 through 43.

106.    Plaintiff's request for identification of alternative suspects to the ones the Arkansas State Medical Board named to the ATF recognized that the FOIA allowed for the assertion of withholding of such information in accordance with law.

107.    Despite this recognition, defendant ATF failed to respond or otherwise reply to the Request of February 4, 2022.

108.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

### Count Five
(Request of March 25, 2022)

109.    Plaintiff restates and realleges the propositions in paragraphs 1 through 46.

110.    Plaintiff eventually corrected the omissions the EOUSA's agent cites, creating two new ones, *see* ¶¶ 47-53 & 83-113.

111.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

## Count Six
### (Request of May 5, 2022)

112.    Plaintiff restates and realleges the propositions in paragraphs 1 through 53.

113.    Plaintiff eventually corrected the omissions the EOUSA's agent cites, so he created a new one, *see* ¶¶ 83-85.

114.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

## Count Seven
### (Request of May 6, 2022)

115.    Plaintiff restates and realleges the propositions in paragraphs 1 through 56.

116.    Defendant ATF failed to respond or otherwise reply to the request of May 6, 2022.

117.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

## Count Eight
### (Request of May 7, 2022)

118.    Plaintiff restates and realleges the propositions in paragraphs 1 through 59.

119.    Defendant EOUSA failed to respond or otherwise reply to the request of May 7, 2002.

120.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

## Count Nine
(Request of June 30, 2022)

121.    Plaintiff restates and realleges the propositions in paragraphs 1 through 62.

122.    Defendant ATF failed to respond or otherwise reply to the request of June 30, 2022.

123.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

## Count Ten
(Request of July 5, 2022)

124.    Plaintiff restates and realleges the propositions in paragraphs 1 through 71.

125.    After first invoking the "unusual circumstances" excuse for taking more than twenty days, the ATF"s usual agent made the usual response that "At this time, the investigation relating to the matter in your request is ongoing."

126.    On information and belief, the plaintiff denies that any investigation relating to the matter in his request was ongoing at the time of the request, the response, or this complaint.

127.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

**Count Eleven**
(Request of July 6, 2022)

128.    Plaintiff restates and realleges the propositions in paragraphs 1 through 76.

129.    Defendant EOUSA provided what is supposed to be a response eighty-five (85) days after the request, in a form letter closing the request and identifying the basis for doing so as (1) the request had provided the states, rather than the federal judicial districts, to which the request pertained, and (2) it was not accompanied by certification of identity form, though the plaintiff's file includes such a form bearing the same date as the request.

130.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

**Count Twelve**
(Request of July 12, 2022, to ATF)

131.    Plaintiff restates and realleges the propositions in paragraphs 1 through 82.

132.    After invoking the "unusual circumstances" self-extension assigning the request to the "simple" track implying a response within about one month, defendant ATF failed to respond or otherwise reply to the request of July 12, 2022.

133.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

## Count Thirteen
(Request of July 12, 2022, to EOUSA)

134.    Plaintiff restates and realleges the propositions in paragraphs 1 through 85.

135.    After the plaintiff made a second try to tell EOUSA's agent Krebs that he was requesting a "copy" of the forensics "that the Government/ATF ran" on the tire found in a shower stall in his home, defendant EOUSA failed to respond or otherwise reply to the request of June 30, 2022.

136.    Defendant EOUSA is improperly withholding documents under the Freedom of Information Act.

## Count Fourteen
(Request of November 25, 2022)

137.    Plaintiff restates and realleges the propositions in paragraphs 1 through 90.

138.    After invoking the "unusual circumstances" self-extension assigning the request to the "simple" track implying a response within about one month, defendant ATF

139.    Defendant ATF is improperly withholding documents under the Freedom of Information Act.

## Prayer for Relief

WHEREFORE, the plaintiff prays the Court for

1)    its declaratory judgment that the mere possibility that agents of an agency say the plaintiff might seek judicial relief from a conviction or sentence—absent actual filing, or leave to file when that is required—does not make the

underlying case, matter, or investigation "open", "pending", or "ongoing" for purposes of invoking 5 U.S.C. § 552(b)(7)(A);

2)      its injunction that the defendants provide the records requested, except if they assert that the same cannot be provided pursuant to a statutory Exemption such as that set forth in 5 U.S.C. § 552 (b)(7), in which case they present evidence such as a *Vaughn* Index with supporting affidavit or declaration establishing that any given request or portion thereof is actually required by the Exemption or withholdable under any other objection they invoke;

3)      its injunction that the defendants provide any reasonably segregable records requested that do not come within a statutory Exemption as established as aforesaid;

4)      its award to the plaintiff of reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

5)      such other and further relief as the Court may deem just and proper.

Dated:  June 9, 2025                    Respectfully submitted,

JOHN WILLIAM SIMON
U.S. Dist. Ct. D.C. Bar # MO0012
Constitutional Advocacy LLC
P.O. Box 11322
Clayton, Missouri. 63105-0122
(314) 604-6982
*jws@constitutionaladvocacy.com*

Attorney for Plaintiff

**Verification**

COMES NOW the declarant, Randeep Singh Mann, M.D., and as authorized by 28 U.S.C. § 1746, states and declares under penalty of perjury all as follows:

1.      My name is Randeep Singh Mann.

2.      I am a prisoner of the federal government, Reg. No. 24775-009, USP Tucson, Arizona.

3.      I am of legal age and of sound mind, and of sound body in respect to my ability to review and execute this declaration.

4.      I have read the foregoing document.

5.      The propositions of fact in the foregoing document are true and correct according to my best personal knowledge, recollection, and belief.

Further, the declarant saith naught.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:  May 20, 2025

                                        s/Randeep Singh Mann
                                        RANDEEP SINGH MANN
                                        Reg. No. 24775-009
                                        USP Tucson
                                        P.O. Box 24550
                                        Tucson, Arizona  85734